NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1711

_____

KIM C. TOWNSEND


v.


PINNACLE ENTERTAINMENT, INC.,
Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:10-cv-06522)
District Judge: Honorable Renée Marie Bumb

_____

Submitted Under Third Circuit LAR 34.1(a)
December 9, 2011

_____

Before: HARDIMAN, BARRY, *Circuit Judges* and RUFE\*, *District Judge*

(Filed: January 11, 2012 )

_____

OPINION OF THE COURT

_____

_____

    \* The Honorable Cynthia M. Rufe, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

RUFE, *District Judge.*

Pinnacle Entertainment, Inc. ("Pinnacle") appeals the District Court's denial of its motion to compel arbitration. For the reasons that follow, we will vacate the decision of the District Court and remand for the entry of an order consistent with this Opinion.

## I.

Pinnacle develops, owns, and operates casinos and related facilities throughout the United States. Appellee Kim Townsend worked for Pinnacle from April 2002 to November 19, 2009. Ms. Townsend was initially employed by Pinnacle as Vice President of Marketing in Pinnacle's Las Vegas, Nevada corporate headquarters. Within her first year of employment, Ms. Townsend was promoted to Senior Vice President of Marketing. Ms. Townsend was promoted twice more, in October 2006, and again in September 2007, first to Executive Vice President and then to Chief Executive Officer. In these positions, she oversaw the development of Pinnacle's Atlantic City Project in New Jersey.

On April 2, 2007, Ms. Townsend entered into a two-year written Employment Agreement ("the 2007 Agreement") with Pinnacle. The 2007 Agreement contained, *inter alia*, an arbitration clause, which provided that "any controversy, dispute, or claim between the parties to this Agreement, including any claim arising out of, in connection with, or in relation to the formation, interpretation, performance or breach of this Agreement shall be settled exclusively by arbitration." (App. 97.) The clause further provided: "This agreement to arbitrate shall survive the expiration of this Agreement and

2

shall cover all issues relevant to the employment of the Executive by Company." (*Id.*)

In February 2009, Pinnacle asked Ms. Townsend to serve as the Project Manager for the development of a new casino, River City, in St. Louis, Missouri. Ms. Townsend accepted the position and began preparing for her relocation from Atlantic City to St. Louis. In March 2009, Pinnacle presented Ms. Townsend with a new two-year employment agreement ("the Proposed Agreement"), which Pinnacle proposed would take effect upon the expiration of the 2007 Agreement. The terms of the Proposed Agreement were nearly identical to the terms of the 2007 Agreement and the arbitration provisions contained in both agreements were, in fact, identical.

The two-year term of the 2007 Agreement ended on April 2, 2009. At that time, the Proposed Agreement had not been finalized, and the parties continued to negotiate its terms. Ms. Townsend alleges that, by September 2009, she and Pinnacle's Officers agreed to the terms of the Proposed Agreement, and the Agreement had been finalized and needed only to be presented to her for execution. However, on November 19, 2009, Pinnacle terminated her employment.

On November 12, 2010, Ms. Townsend filed a complaint in the Superior Court of New Jersey which was timely removed to the United States District Court for the District of New Jersey on December 15, 2010. Ms. Townsend alleges, *inter alia*, that Pinnacle breached either the 2007 Agreement or the Proposed Agreement when it terminated her. She asserts that although the Proposed Agreement was never formally executed, the

actions of the parties evidence their intent to be bound by it. Alternatively, she asserts that the 2007 Agreement automatically renewed based on the continuing employment relationship of the parties. Pinnacle maintains that neither employment agreement was in effect at the time of Ms. Townsend's termination.

After removing the case to the District Court, Pinnacle filed a motion to dismiss or to compel arbitration, asserting that Ms. Townsend was bound to arbitrate the dispute pursuant to the arbitration provision contained in both agreements. Ms. Townsend opposed the motion.

The District Court heard argument on the motion on March 7, 2011. After considering the parties' arguments, the District Court denied the motion on the record, finding that factual disputes prevented it from determining whether there was an employment agreement in effect at the time of Ms. Townsend's termination, and that resolution of this issue was necessary to determine whether there was a binding agreement to arbitrate. On March 8, 2011, the District Court entered an Order denying the motion.

Pinnacle filed a timely notice of appeal to this Court. Pinnacle asserts that the District Court erred in failing to give effect to the survival language of the arbitration provision contained in the 2007 Agreement, which provides that the agreement to arbitrate survives the expiration of the Agreement.

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to § 16(a)(1)(B) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. *See* 9 U.S.C. § 16(a)(1)(B) ("An appeal may be taken from . . . an order . . . denying a petition under section 4 of this title to order arbitration to proceed."). "We exercise plenary review over questions of law concerning the applicability and scope of arbitration agreements. . . . We review the District Court's factual findings for clear error." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 200 (3d Cir. 2010) (quotations and citations omitted).

## III.

"[The FAA] creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Employment contracts, except those regarding the employment of transportation workers, are within the ambit of the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

The FAA provides that a clause in an employment contract evidencing an intent to arbitrate disputes arising from that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that this provision reflects a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, LLC v. Concepcion*, --- U.S. ----, 131 S. Ct. 1740, 1745 (2011)

5

(internal quotation marks and citation omitted). In accordance with these principles, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 1745-46 (internal citation omitted). Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Pursuant to the FAA, "a federal court is authorized to compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitrable issue and one party to the agreement has failed to enter arbitration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999). In addressing a motion to compel arbitration, a court may not resolve the merits of the underlying dispute. *Gay v. CreditInform*, 511 F.3d 369, 386-87 (3d Cir. 2007). A district court need only "engage in a limited review to ensure that the dispute is arbitrable." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (internal quotation omitted). This review is limited to determining (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Id.* (internal quotation omitted). If a court determines that an arbitration clause is valid and enforceable, "it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator." *Harris*, 183 F.3d at 179.

Here, the District Court denied the motion to compel arbitration, finding that

6

Pinnacle was trying "to have it both ways," by arguing on the one hand that neither

Agreement was in effect at the time of Ms. Townsend's termination, while at the same

time asserting that Ms. Townsend should be compelled to arbitrate under one or both of

the Agreements.[1]  (App. 28-29.)  The District Court reasoned that although the dispute

here was within the scope of the arbitration provisions of both Agreements, contested

issues of fact precluded the Court from determining whether any employment agreement

---

[1]    Pinnacle advances an additional argument in support of its appeal.  According to Pinnacle, Ms. Townsend's claims in this case are dependent upon a finding that Ms. Townsend was subject to an employment agreement (either the 2007 Agreement or the Proposed Agreement) at the time of her termination.  Ms. Townsend concedes that both the 2007 Agreement and the Proposed Agreement contain a valid and enforceable arbitration provision that covers the underlying dispute between the parties.  In opposing the Motion to Compel, however, Ms. Townsend argued that there was a dispute as to which (if any) agreement was in effect at the time of her termination and that this issue of fact prevented the District Court from determining whether there was a valid agreement to arbitrate at the time of Ms. Townsend's termination.  Pinnacle asserts that the District Court erred in failing to give appropriate weight to Ms. Townsend's contradictory positions in light of federal policy favoring arbitration.

The District Court focused only on Pinnacle's apparent contradictory positions without discussing the likewise contradictory position of Ms. Townsend.  Both parties seek to "have it both ways" here.  Ms. Townsend claims that either the 2007 Agreement or the Proposed Agreement was in effect that the time of her termination, yet also argues that she is not required to arbitrate under the valid arbitration provision contained in both Agreements.  Pinnacle denies that either Agreement was in effect at the time of Ms. Townsend's termination, yet argues that Ms. Townsend should be held to the terms of the Agreements, which compel arbitration.

Pinnacle's duality of positions is not necessarily inconsistent, however.  If the arbitration provision contained in the 2007 Agreement extends beyond the expiration of the Agreement itself, the parties are required to arbitrate the dispute regardless of whether the terms of either agreement were otherwise in effect.  Since we find that the survival language of the arbitration provision contained in the 2007 Agreement compels arbitration, we need not address the apparent paradox presented by the parties' seemingly contradictory positions here.

was in effect at the time of Ms. Townsend's termination and therefore, whether an agreement to arbitrate was in force. (App. 27-28.) We disagree.

The arbitration clause contained in the 2007 Agreement provides: "[A]ny controversy, dispute, or claim between the parties to this Agreement, including any claim arising out of, [or] in connection with . . . this Agreement shall be settled exclusively by arbitration . . . . *This agreement to arbitrate shall survive the expiration of this Agreement and shall cover all issues relevant to the employment of the Executive by Company*." (App. 97) (emphasis added). When phrases such as "any claim arising out of" appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision. *See, e.g.*, *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000).

The underlying employment dispute between the parties here falls within the scope of the arbitration provision. Counsel for Ms. Townsend readily admitted at oral argument before the District Court: "If the Court finds that the [2007 Agreement] automatically renewed, then I would have agreed to arbitrate it, yes. . . . And we were prepared to -- we would have been prepared to go to arbitration and never filed this lawsuit if while we were talking after the termination [Pinnacle] said yes, okay, well, the contract's renewed, you have to go to arbitration." (App. 21-22.) The District Court also acknowledged the general arbitrability of this dispute. (App. 27-28.) Because the employment dispute falls within the scope of the arbitration provision, we need only determine whether a valid

8

agreement to arbitrate existed at the time of Ms. Townsend's termination.

While an agreement to arbitrate does not usually continue in effect after the underlying contract expires, a provision relating to dispute resolution may, in some instances, survive the expiration of the contract. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991); *Luden's Inc. v. Local Union No. 6, Bakery, Confectionery & Tobacco Workers Int'l Union*, 28 F.3d 347, 363-64 (3d Cir. 1994). In *Litton*, the Supreme Court held that the parties to a collective bargaining agreement could be required to arbitrate disputes arising out of the agreement, even after the agreement expired. In so holding, the Supreme Court applied the general rule of contract interpretation that the intention of the parties controls the interpretation of the contract. *Litton*, 501 U.S. at 208.[2]

Here, the arbitration provision in the 2007 Agreement explicitly provides that the "agreement to arbitrate shall survive the expiration of this Agreement," and shall cover

---

[2] In *Litton* the Supreme Court addressed whether the parties to a collective bargaining agreement could be required to arbitrate disputes arising out of the agreement, even after the agreement expired. The Court held that an agreement to arbitrate may survive the expiration of the agreement if post-term disputes "arise under the contract." *Litton*, 501 U.S. at 206-07. Whether a post-termination dispute "arises under the contract" depends upon whether there is a link between the post-termination dispute and the underlying agreement. *Id.* at 207-08. "Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement. And of course, if a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement, and so become subject to the contract's arbitration provisions." *Id.*

"all issues" related to Ms. Townsend's employment. This provision evidences the intent of the parties to arbitrate all disputes arising out of the employment relationship between Ms. Townsend and Pinnacle, not simply those which arise during the term of the 2007 Agreement.[3] Therefore, we conclude that the agreement to arbitrate an employment dispute was valid at the time of Ms. Townsend's termination, without regard to which agreement, if any, was otherwise in effect.

**IV.**

For the foregoing reasons, we vacate the order of the District Court and remand the matter to the District Court for the entry of an order consistent with this Opinion.

---

[3] The District Court briefly addressed the survival language, finding that it did not apply because "there were no disputed facts or facts that really are relevant because the employment dispute did not *occur* during the two-year period while the 2007 contract indisputably was in effect." (App. 23-24) (emphasis added). This reading is contrary to the explicit language of the Agreement.

10